IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DOUGLAS S. STARR | § | |
|     TDCJ-CID #641646 | § | |
| v. | § | C.A. NO. C-11-207 |
| | § | |
| MCCONNELL UNIT SEC. STAFF, ET AL. | § | |

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ"), who is currently incarcerated at the Coffield Unit in Tennessee Colony, Texas. Proceeding pro se, he filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants, prison officials at the McConnell Unit, were deliberately indifferent to his medical needs. (D.E. 1). Pending is Defendants' motion for summary judgment. (D.E. 50). Plaintiff has failed to file a response.[1] For the reasons that follow, Defendants' motion for summary judgment is granted.

**I. JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties, (D.E. 16, 30), the case was referred to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment. (D.E. 17); see also 28 U.S.C. § 636(c).

**II. PROCEDURAL HISTORY**

On June 8, 2011, Plaintiff initiated this action against (1) Lori Hudson; (2) Dr. Theresa Whitt; (3) Erick Echavarry; (4) Dr. Maximiliano Herrera; (5) Warden Ernest Guterrez; (6) Warden Norris Jackson; (7) William Burgin; (8) Captain Salazar; and (9) Officer English. (D.E.

---

[1] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

1). His claims of deliberate indifference to his medical needs against Lori Hudson, Dr. Theresa Whitt, Erick Echavarry, Dr. Maximiliano Herrera, Warden Ernest Guterrez, Warden Norris Jackson, and William Burgin were retained. See generally Starr v. McConnell Unit Security Staff, No. C-11-207, 2011 WL 5027399 (S.D. Tex. Aug. 19, 2011) (unpublished). All his other claims against the remaining Defendants were dismissed. Id.

Defendants filed their answer on September 29, 2011. (D.E. 27). On February 3, 2012, Defendants collectively submitted this motion for summary judgment. (D.E. 50).

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff accuses Defendants, who are prison staff at the McConnell Unit, of engaging in various acts in deliberate indifference to his serious medical needs.

### IV. DOCUMENTED SUMMARY JUDGMENT EVIDENCE

Defendants offer the following documents in support of their motion for summary judgment:

  Ex. A:  Relevant Portions of Office of Professional Standards Records for Plaintiff with business records affidavit;

  Ex. B:  A Relevant Portion of Plaintiff's UTMB Health Records with business records affidavit;

  Ex. C:  A Relevant Portion of Plaintiff's TDCJ Health Records with business records affidavit;

  Ex. D:  Relevant Portions of Plaintiff's Classification Records from May 1, 2009 to January 13, 2012 with business records affidavit;

  Ex. E:  Affidavit of Dr. Steven Bowers;

  Ex. F:  Affidavit of Dr. Maximiliano Herrera;

  Ex. G:  Affidavit of Ernest Guterrez;

  Ex. H:  TDCJ Administrative Directive: Offender Housing Assignment Criteria and

      Procedures;

Ex. I:  Affidavit of William Burgin;

Ex. J:  UTMB Practice Manager Job Description; and

Ex. K:  Correctional Managed Health Care Policy Manual, A-03.1, Medical Autonomy.

The summary judgment evidence, including the Plaintiff's testimony at the <u>Spears</u> hearing, establishes the following:

Plaintiff has suffered with chronic, serious back problems for the last two and a-half years as a result of degenerative disc disease and a compressed disc in his back. In addition, he has arthritis in his shoulders, hips, and lower spine, as well as a possible torn rotator cuff in his right shoulder. His impairments cause him pronounced pain and limit his mobility.

In April 2009, Nurse Practitioner Wagner sent Plaintiff to the Stiles Unit to get a walker. While he was there, he was seen by a number of physicians from Hospital Galveston who determined that he should be housed in a "Type III, single-level, barrier free, safe haven facility." On June 5, 2009, the Stiles Unit doctor, Dr. Reyes, recommended that Plaintiff be transferred to such a facility. In addition, Dr. Reyes determined that Plaintiff's pain was best managed with Tylenol #3. Plaintiff received this narcotic pain medication while at the Stiles Unit.

On June 9, 2009, Stiles Unit staff told Plaintiff he was being transferred to a Type III facility. He left that day and was sent first to Huntsville, then to the Darrington Unit, before being returned to the McConnell Unit. As soon as he arrived at the McConnell Unit on June 11, 2009, Plaintiff spoke to Nurse Randall and reported that he was not supposed to be there. Indeed, the McConnell Unit does not even allow walkers. Plaintiff then spoke to Dr. Stein who

3

agreed that he should be at a different unit due to his impairments. Dr. Stein indicated that he would send an e-mail to the health services liaison in an attempt to get him transferred to another facility. (D.E. 51, Ex. C, at 40); (D.E. 50, Ex. E, at 3). He noted that Plaintiff would not be able to get Tylenol #3 at the McConnell Unit, but he would submit referral to the hospital in Galveston. Id. Dr. Stein also wanted Plaintiff to receive an MRI regarding his back problems. Id.

Dr. Stein talked to classification officials, including Defendants Guterrez and Warden Jackson. Plaintiff was assigned to administrative segregation, one row, with the explanation that this housing assignment was "just as good as Type III housing." Defendant Herrera testified that neither Defendant Hudson as a nurse practitioner, nor Defendant Echavarry as a physician's assistant could recommend that an inmate be transferred to another facility for medical reasons. (D.E. 50, Ex. F., at 2). Defendant Whitt as the McConnell Unit medical director could recommend inmates be transferred to other facilities for medical reasons. Id. at 3. However, "[i]f a unit medical director determines that an offender may be eligible for transfer she will then forward her recommendation to the Regional Medical Director of the region in which the unit lies." Id. "Medical personnel at the unit facilities on their own cannot transfer an offender to [a] Type III facility." Id.

Defendant Herrera as an associate regional medical director would review a transfer recommendation in conjunction with the inmate's medical records. Id. Nonetheless, an associate regional medical director does not have authority to transfer an inmate unilaterally for medical reasons:

> [T]he final decision to recommend to TDCJ that an offender be transferred to another facility for medical purposes does not lie

4

> with the Regional Medical Director. The Regional Medical
> Director makes his recommendation to a Utilization Review
> Committee (URC) in Galveston. If the URC determines that the
> offender needs to be moved to a Type III facility, the URC
> recommends the move to TDCJ's State Classification Committee
> (SCC), which makes the final determination based on safety and
> security factors. If the SCC determines that the offender is not
> eligible to be transferred due to his security level, then the medical
> staff must abide by that decision.

Id. Defendant Herrera did not deny Plaintiff a transfer to a Type III facility. Id.

Because Plaintiff is a convicted sex offender and restricted to administrative segregation, he was not eligible to be transferred to a Type III facility. (D.E. 50, Ex. E, at 3). Moreover, he was originally assigned to administrative segregation in June 2007 after indicating that he planned to escape and would be willing to hurt correctional officers in the process. (D.E. 50, Ex. D, at 4-15). Plaintiff alleges that his cell in administrative segregation is not equipped for a handicapped person. Specifically, he does not have a handicap rail or bar in his cell, nor does he have access to a handicapped shower. One time he fell in the shower, necessitating a trip to the emergency room.

Administrative segregation "is the maximum level of security applied to offenders who pose a danger to other offenders or staff, or who are in danger of harm by other offenders." (D.E. 50, Ex. E, at 4). They "live in single cells and have a sink, toilet and a bed which are all within approximately four feet of each other." Id.

Plaintiff explained that the McConnell Unit medical staff is not authorized to prescribe Tylenol #3, and the pain medications he receives are inadequate. Defendant Herrera testified regarding the use of Tylenol #3 in a prison setting:

> Tylenol 3 is a short acting medicine that I typically only prescribe
> for acute problems as it is a narcotic and if used for a long period

can be additive.  Because it is addictive, medical staff on any given
unit cannot give an offender Tylenol 3 for more than twenty-one
days.  If Tylenol 3 is needed for longer than twenty-one days, a
non-formulary request must be sent to Pharmacy Services in
Huntsville for approval.  If Pharmacy Services in Huntsville
defers, a Regional Medical Director may override the deferral if it
is warranted.  However, as in Mr. Starr's case, the deferral would
not likely be overridden as Tylenol 3 has serious detrimental side
effects for individuals with [certain specific ailments that Plaintiff
has].  Further, Tylenol 3 can cause a user to be groggy and
disoriented and thus, I and likely other medical professionals,
would be disinclined to prescribe it to an individual, such as Mr.
Starr, who presents a fall risk.

(D.E. 50, Ex. F., at 3).  Defendant Herrera asserted that he did not deny Plaintiff any medical treatment.  Id.

Although Dr. Stein scheduled Plaintiff for an MRI, on August 21, 2009, he "refused the medical chain to [the hospital in Galveston] for an MRI on his back."  (D.E. 50, Ex. E, at 4); see also (D.E. 50, Ex. F., at 3) ("a review of [Plaintiff's] medical records showed that he refused to have an MRI and participate in physical therapy").  He also "requested that Dr. Stein discontinue the prescriptions to pain medications" that were prescribed as alternatives to Tylenol #3 because he did not believe they helped.  (D.E. 50, Ex. E, at 4).  He told "Dr. Stein that he did not want to go to [the] Pain Clinic because he was not interested in a non-narcotic solution to his pain."  Id.  Plaintiff's medical records indicate that he often refused treatment, including testing or referrals to specialists "that would have assisted the medical providers in finding out the source of his back, hip and shoulder pain or would have helped in the relief of said pain."  Id. at 5-6.  These records also reveal that he received extensive treatment for his back, hip and shoulder pain, including from Defendants Hudson, Herrera, and Whitt.  Id. at 4-5; see also (D.E. 50, Ex. C).

On May 12, 2011, Plaintiff began experiencing symptoms of a urinary tract infection.  On

6

May 19, 2011, he submitted a sick call request to be seen in the infirmary. On May 25, 2011, he was seen by Physician Assistant Olivares who prescribed an antibiotic. He took the medication for ten days and it provided some relief, but it did not cure the infection and his symptoms returned. Thereafter, he spoke to officers everyday complaining about his pain and requesting medical attention, and filing I-60s. He was scheduled for a visit to the infirmary on June 5, 2011, but, due to security staff shortages, he was not taken there until June 8, 2011. At that appointment, Plaintiff saw Defendant Hudson who took a urine sample. She told him that his urine test was unremarkable for infection, but she did prescribe him another medication.

In an affidavit, Defendant Guterrez testified that "[a]s a Warden, I am unable to single-handedly deny any offender the right to transfer to another unit. On each unit there is a Unit Classification Committee (UCC) which can recommend that an offender be transferred for *security* reasons.... However, the UCC can only make a recommendation. The final decision as to whether an offender is transferred is made by the State Classification Committee in Huntsville." (D.E. 50, Ex. G, at 2) (emphasis in original). He further explained that "recommendations for transfers based on *medical* reasons are handled in a slightly different manner, but with effectively the same end result. If an offender is recommended for a transfer to another unit by the medical staff of his unit due to his medical conditions that recommended transfer is not even brought before the UCC. A transfer recommended for medical reasons bypasses the UCC entirely and is determined by the Huntsville State Classification Committee (SCC). If the SCC determines that an offender is eligible to be transferred to another unit on the basis of his medical conditions, the SCC will notify the unit that the offender needs to be transferred and the unit will ready the offender to be moved." Id. at 2-3 (emphasis added).

None of the security officers, including the senior warden, can "dictate to medical personnel what medical treatment to provide an offender." Id. at 3. The Correctional Managed Health Care Policy Manual utilized by TDCJ mandates regarding medical autonomy that "[d]ecisions and actions regarding the health care services provided to offenders are the sole responsibility of qualified health care personnel and are not compromised for security reasons or countermanded by non-clinicians." (D.E. 50, Ex. K).

Defendant Burgin testified that he was the Practice Manager for the University of Texas Medical Branch ("UTMB") at the McConnell Unit. (D.E. 50, Ex. I, at 2). He explained that his role as Practice Manager was administrative with duties that "included reviewing and investigating inmate-patient grievances that are brought against clinic staff or otherwise related to the infirmary." Id. at 2-3; (D.E. 50, Ex. J) (UTMB Practice Manager Job Description). His investigation involved "either speaking with clinic staff or reviewing the patient's medical chart" and were simply "limited to determining whether the patient was receiving care." (D.E. 50, Ex. I, at 3). "Even if a patient stated in their grievance what their medical condition was or requested to be transferred to another unit for medical reasons, I could not make any suggestions to medical staff on how to treat the patient as I had no authority to tell the medical staff how they should proceed with the treatment plan of a patient." Id.

Defendant Burgin further explained that he was not a medical practitioner and did not provide medical treatment to inmates at the McConnell Unit. Id. Moreover, he "had no involvement in making a determination of the type of care a patient should receive for a particular medical condition or if a patient should be transferred to another facility due to his medical conditions." Id. Indeed, "[t]he type of medical care a patient should receive, such as

8

testing or medications prescribed, was determined by the medical provider." Id.

## V. DISCUSSION

Defendants move for summary judgment, arguing that Plaintiff's claims are moot and without merit. (D.E. 50).

**A.    The Legal Standard For A Summary Judgment Motion.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992) (citations omitted). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, Tex., 922 F.2d

1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.     Plaintiff's Claims Are Denied As Moot.**

In the complaint, Plaintiff simply requested "that the security staff and medical staff here at the McConnell Unit abide by their own written policies by placing me at the facility noted in my medical file." (D.E. 1, at 2). In other words, the relief he sought was a transfer to another prison unit. He also sought a court order ensuring "that I get all medical care necessary for proper treatment of my medical condition and that the security staff get me to all of my medical appointments when scheduled instead of delaying them for days or weeks at a time." Id. at 2-3.

On January 26, 2012, Plaintiff notified the Court that he had been transferred to the Coffield Unit in Tennessee Colony, Texas. (D.E. 48). This transfer to the Coffield Unit has rendered Plaintiff's claims moot. See Edwards v. Johnson, 209 F.3d 772, 776 (5th Cir. 2000) (request for injunctive and declaratory relief becomes moot when inmate leaves the complained-of facility); Cooper v. Sheriff, Lubbock County, Tex., 929 F.2d 1078, 1084 (5th Cir. 1991) (per curiam) (inmate's transfer to another facility rendered moot his claims for injunctive relief for unconstitutional deprivation of food at the former prison). Accordingly, Plaintiff's claim for injunctive relief requiring a transfer to another prison unit and prison officials to provide certain

medical care is denied as moot.

### C. Plaintiff Has Failed To Allege That Certain Defendants Were Personally Involved In The Constitutional Violations That He Alleges.

It is well established that "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citing Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976)). A state actor may be liable under § 1983 only if she "was personally involved in the acts causing the deprivation of [plaintiff's] constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981) (per curiam) (citation omitted). Additionally, supervisory officials cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691-95 (1978) (repudiating vicarious liability in the context of § 1983 actions); accord Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984) (en banc) (per curiam). "Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983." Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 534 (5th Cir. 1997). For a supervisory official to be held liable, they must "affirmatively participate in the acts that cause constitutional deprivation" or "implement unconstitutional policies that causally result in plaintiff's injury." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).

### 1. Plaintiff fails to allege that Defendants Guterrez and Jackson were personally involved in the constitutional violations that he alleges.

Plaintiff alleges that various classification officials, including Defendants Guterrez and Jackson were involved in denying him a transfer to a Type III single-level facility. Starr, 2011

11

WL 5027399 at *2. Defendant Guterrez testified that wardens do not have the authority to deny inmates transfers. Instead, the final decision is made by the State Classification Committee. More important, in a case such as Plaintiff's action concerning a transfer request for medical reasons, the wardens have no role. Instead, the ultimate decision is made by the State Classification Committee based on recommendations by the medical staff.

Moreover, Defendants Guterrez and Jackson cannot tell to the McConnell Unit medical staff what medical treatment to provide to Plaintiff. Thus, they do not control whether he receives a certain type of medication, or any other therapeutic medical device.

Plaintiff has failed to demonstrate that Defendants Guterrez and Jackson were personally involved in the constitutional violations that he alleges. Accordingly, his claims against them are dismissed.

> **2.  Plaintiff fails to allege that Defendant Burgin was personally involved in the constitutional violations that he alleges.**

As the UTMB Practice Manager at the McConnell Unit, Defendant Burgin did not have any role in providing medical care to patients. Moreover, he testified that he was not involved in the decision of whether to transfer inmates for medical reasons.

Defendant Burgin's only involvement with Plaintiff was the investigation of grievances regarding his complaints about medical care at the McConnell Unit. Even if these allegations against him are true, they fail to state a constitutional violation because inmates have no constitutional right to have their grievances investigated or responded to favorably. See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected interest in having their grievances investigated or resolved in their favor); see also Beall v. Johnson, 54 F. App'x 796, 2002 WL 31845615, at *1 (5th Cir. Dec. 12, 2002) (per curiam) (unpublished)

(prisoner's allegation that he has a constitutionally protected right to have his grievance investigated and resolved is without merit because resolution of the grievance does not involve a "significant hardship ... in relation to the ordinary incidents of prison life.") (citing Sandin v. Conner, 515 U.S. 472, 485-86 (1995)); Taylor v. Cockrell, 92 F. App'x 77, 78 (5th Cir. 2004) (per curiam) (unpublished) (Sandin, 515 U.S. at 485-86). Plaintiff fails to establish that Defendant Burgin failed to properly investigate his grievances, and his claim is dismissed for failure to state a claim.

Plaintiff has failed to allege that Defendant Burgin was personally involved in denial of a transfer to a different facility, or the denial of medical care that he alleges. Accordingly, his claims against him are dismissed.

### 3. Plaintiff fails to allege that Defendant medical providers were personally involved in the denial of a transfer to a Type III facility.

Defendant Hudson as a nurse practitioner did not have authority to even recommend that an inmate be transferred for medical reasons. Similarly, Defendant Echavarry as a physician's assistant did not have authority to even recommend that an inmate be transferred for medical reasons. Plaintiff has failed to allege that Defendants Hudson and Echavarry were personally involved in the denial of a transfer to a Type III facility. Accordingly, his claims against them for the denial of a transfer are dismissed.

Defendant Whitt, as the McConnell Unit medical director, may recommend an inmate be transferred for medical reasons. However, she does not have the authority to transfer Plaintiff or any other inmate to a specific prison unit. Dr. Reyes at the Stiles Unit recommended Plaintiff be transferred to a Type III facility. Moreover, Dr. Stein, as the McConnell Unit medical director, sought to have Plaintiff transferred to a Type III facility. Plaintiff has failed to allege that

Defendant Whitt was personally involved in the denial of a transfer to a Type III facility. Accordingly, his claims against her for the denial of a transfer are dismissed.

Finally, Dr. Herrera, as an associate regional medical director, could not transfer an inmate for medical reasons. He testified that he did not deny Plaintiff a transfer to a Type III facility. Plaintiff has failed to allege that Defendant Herrera was personally involved in the denial of a transfer to a Type III facility. Accordingly, his claims against him for the denial of a transfer are dismissed.

**D.     Plaintiffs Claim Of Deliberate Indifference To Serious Medical Needs Is Dismissed.**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations omitted). Conditions that result in "unquestioned and serious deprivation of basic human needs," or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Hudson v. McMillian, 503 U.S. 1, 8-10 (1992) (citations omitted). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834 (citations omitted).

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that officials acted with deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Wilson v. Seiter, 501 U.S. 294, 303 (1991); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam). Deliberate indifference is more than mere negligence. Farmer, 511 U.S. at 835. To act with deliberate indifference, a prison official

must both know of and disregard an excessive risk to inmate health or safety. Id. at 837.

Furthermore, "negligent medical care does not constitute a valid § 1983 claim." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993), abrogated on other grounds by Arvie v. Broussard, 42 F.3d 249 (5th Cir. 1994) (per curiam). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

First, Defendants prescribed Plaintiff various pain medications as well as other treatments for his medical issues. See Stewart, 174 F.3d at 534; Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. He refused non-narcotic pain medications that Defendants prescribed for him. Defendant Herrera testified that Plaintiff could not receive Tylenol #3 long-term in general and specifically at the McConnell Unit for both medical and security reasons. The record is clear that Defendants attempted to treat Plaintiff's pain, but he repeatedly refused medication and other treatments.

Second, courts have explained that a mere disagreement with the level and type of treatment is not actionable pursuant to the Eighth Amendment. Estelle, 429 U.S. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) (per curiam). To the extent that there is a difference of opinion between Plaintiff and Defendants about what medical care is appropriate that does not state a claim for deliberate

indifference. Accordingly, Plaintiff's claims against Defendants Herrera, Whitt, Hudson, and Echavarry regarding Tylenol #3 and pain management care are dismissed.

## VI. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment, (D.E. 50), is GRANTED and Plaintiff's claims are dismissed.

ORDERED this 13th day of March 2012.

BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE